**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cr-00163-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    SIR ALEXANDER NEAL

    Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART
MOTIONS TO QUASH SUBPOENAS**

---

On July 12, 2011, Defendant Sir Alexander Neal filed a Motion to Suppress the evidence seized during the March 15, 2011 traffic stop that resulted in his arrest. (ECF No. 14.) In preparation for the hearing on his Motion to Suppress, Defendant moved the Court *ex parte* for the issuance of two subpoenas *duces tecum* pursuant to Federal Rule of Criminal Procedure 17(c).[1] (ECF Nos. 26 & 27.) The Court granted Defendant's request and ordered that the Clerk issue the requested subpoenas. (ECF Nos. 29 & 30.)

Both subpoenas were issued to the Custodian of Records at the Denver Police Department. (ECF No. 32-1.) The first (hereafter "MDT subpoena") required that the Custodian produce all documents:

---

[1] Though these subpoenas were filed *ex parte* and are so titled on the docket, all parties are now aware of the existence and the substance of these requests. Therefore, the Court refers to the documents as though they were not filed *ex parte*.

>Regarding Report: # 2011-119564, Date/Time of Stop:
>March 15, 2011 @ 2340 hours
>Officers Involved: Officer Jarrod Foust, #96028 and Officer
>Paul Vonfeldt, #97003
>Individuals in Vehicle: LaQresha Stewart and Sir Alexander
>Neal
>"Copy of any and all transactions sent and/or received from
>the police radio and/or the MDT (Motor Data Terminal). The
>requested material should include but not be limited to data
>from: NCIC, CCIC, DMV (Department of Motor Vehicles),
>IMS (Local Records Management System.)"

The second (hereafter "Personnel Records Subpoena") required production of the following:

>Personnel records for:
>    Officer Paul F. Von Feldt, #P97003
>    Officer Jarrod J. Foust, #P96028
>Personnel files to include any and all records of work history
>and training, complaints against the individual officers,
>disciplinary actions, both pending and already adjudicated,
>records and reports, commendations.

In response to these subpoenas, Motions to Quash were filed by the Denver Police Department ("DPD") (ECF No. 32), Officers Von Feldt and Faust (hereafter "Individual Officers") (ECF No. 33), and the United States (ECF No. 34).[2] These Motions to Quash are currently before the Court.

For the reasons set forth below, the Motions to Quash are GRANTED in part and DENIED in part.

## I.  LEGAL STANDARD

The Court has wide discretion to determine whether a Rule 17(c) subpoena is appropriate. The trial court is in the best position to "view the witness or evidence and

---

[2] The Court will refer to the Denver Police Department and the Individual Officers collectively as the "Interested Parties".

assess credibility and probative value." *United States v. Ortiz*, 804 F.2d 1161, 1164 n.2 (10th Cir. 1986). The Court's decision is reviewed for abuse of discretion and will be reversed only if the reviewing court has "a definite and firm conviction that the court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *United States v. Gonzales-Acosta*, 989 F.2d 384, 388-89 (10th Cir. 1993).

The parties dispute the substantive legal standard for issuance of a subpoena pursuant to Rule 17(c). The Interested Parties and the Government contend that the rule announced adopted by the Supreme Court in *United States v. Nixon*, 418 U.S. 683 (1974)[3] applies:

> Under this test, in order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Id.* at 699-700. The Supreme Court concluded that the simple test a party must meet to enforce a subpoena is: "(1) relevancy; (2) admissibility; (3) specificity." *Id.*

Defendant argues that the *Nixon* test does not apply here because the subpoenas are issued to a third-party rather than to the Government. One court has held that "[a] real question remains as to whether it makes sense to require a

---

[3] This rule was initially propounded by the Southern District of New York in *United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y. 1952). In *Nixon*, the Supreme Court simply adopted the rule from *Iozia*.

defendant's use of Rule 17(c) to obtain material from a non-party to meet this same standard." *United States v. Nachamie*, 91 F. Supp. 2d 552, 562 (S.D.N.Y. 2000). The basis for this different standard is that, unlike the Government, the defendant has not had an earlier opportunity to obtain material by means of a grand jury subpoena. Because the Rule states only that a court may quash a subpoena "if compliance would be unreasonable or oppressive," the judicial gloss that the material sought must be evidentiary—defined as relevant, admissible, and specific—may be inappropriate in the context of a defense subpoena of documents from third parties. As one court has noted,

> The notion that because Rule 16 provides for discovery, Rule 17(c) has no role in the discovery of documents can, of course, only apply to documents in the government's hands; accordingly, Rule 17(c) may well be a proper device for discovering documents in the hands of third parties.

*U.S. v. Tomison*, 969 F. Supp. 587, 593 n.14 (E.D. Cal. 1997). Defendant advocates that the only test for obtaining the documents should be whether the subpoena was: (1) reasonable, construed using the general discovery notion of material to the defense; and (2) not unduly oppressive for the producing party to respond. *Nachamie*, 91 F. Supp. 2d at 563.

The Court finds that it need not decide which standard should apply because the outcome would be the same under either standard in this case. Because it is the more widely-accepted approach, the Court will analyze this case under the *Nixon* standard.

## II.  ANALYSIS

The Government and the Interested Parties contend that Defendant has failed to

meet his burden of showing that the Subpoenas at issue here satisfy the *Nixon* test.[4] The Court will consider whether each subpoena satisfies the *Nixon* standard in turn below.

**A.   MDT SUBPOENA**

Defendant asserts that he needs this material to assist its efforts at piecing together what occurred the night of the traffic stop. Because the propriety of the traffic stop is the key issue in the Motion to Suppress, the information sought in the MDT Subpoena is highly relevant. No party has raised an issue as to the admissibility of such material and the Court sees no reason why it would not be admissible. Thus, the Court finds that the material sought in the MDT Subpoena is relevant and admissible.

DPD's principal argument in favor of quashing the MDT Subpoena is that it is overbroad and would require production of material completely unrelated to this case. The Court disagrees. The MDT Subpoena specifies the date and time of the stop, the officers involved including their badge numbers, the number of the police report, and the individuals stopped. It requests all data traffic and communications related specifically to the stop that resulted in the prosecution at issue here. DPD's argument that it would be required to produce "virtually all communication over a Denver police radio at any time on March 15, 2011" is absurd.

Because the *Nixon* standard is satisfied, the Motions to Quash are DENIED with respect to the MDT Subpoena. The Court ORDERS that the DPD Custodian of

---

[4] The Government also argues that the subpoenas should not have been issued *ex parte*. Because all parties are now aware of the existence and substance of the subpoenas, the Court finds that any issue regarding the *ex parte* nature of the subpoenas is moot.

Records produce to the Defendant the materials responsive to the subpoena not later than **August 23, 2011**.

### B.     Personnel Records Subpoena

The Interested Parties argue that Defendant has not met his burden of showing that the Personnel Records Subpoena will produce relevant materials. They also argue that Defendant is going on a "fishing expedition" and argue that the Officers' privacy rights should trump any right Defendant may have to their personnel records.

The Court will first consider whether the *Nixon* standard is satisfied and then address the balancing of the Officers' privacy rights with Defendant's right to prepare for the suppression hearing.

#### 1.     Relevance

The first prong of the *Nixon* standard requires the Court to assess whether the documents sought have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

The key issue at the suppression hearing is the constitutionality of the traffic stop and search of the Jeep that resulted in the seizure of the firearm which Defendant is charged with possesing. Officer Faust initiated the traffic stop of the Jeep after he allegedly saw it make an illegal turn. Defendant argues that there was no such illegal turn. Thus, Officer Faust's credibility will be a key factor in the Court's determination as to the legality of the initial stop.

Upon his initial approach of the vehicle, Officer Faust allegedly saw marijuana in

plain view on the backseat of the Jeep. The Government contends that, once the marijuana was seen by Officer Faust, the search of the vehicle was permitted under the automobile exception to the warrant requirement. *See United States v. Anderson*, 114 F.3d 1059, 1065 (10th Cir. 1997) ("The Supreme Court has held that 'police officers who have probable cause to believe there is contraband inside an automobile that has been stopped on the road may search it without obtaining a warrant.'"). Based on this argument, it appears that if Officer Faust saw marijuana in plain view inside the vehicle, the search that led to the seizure of the firearm was permissible. Thus, with respect to whether the scope of the search was permissible, Officer Faust's credibility will again be the key issue. Given these circumstances, there is no doubt as to the relevance of material in Officer Faust's personnel file that could impeach his credibility.

Officer Von Feldt did not arrive on the scene until after Officer Faust allegedly saw the marijuana in plain view. It appears to the Court that nothing Officer Von Feldt did after he arrived on scene added to or subtracted from the constitutionality of the search of the vehicle. Thus, Officer Von Feldt's credibility, for purposes of the Motion to Suppress, is not material.[5] Given Officer Von Feldt's significant privacy interests in his personnel file, the Court finds that the relevance of any information in such files is outweighed by Von Feldt's privacy interests. Accordingly, the Motions to Quash are GRANTED to the extent they seek to quash the subpoena for the personnel file of

---

[5] If Defendant pursues this case to trial there may be a question as to whether he was in "possession" of the firearm. At that point, Von Feldt's testimony may be more material as he was the first officer to see the firearm—at that point allegedly under the passenger's seat—and also allegedly witnessed the Defendant make motions that could be interpreted as moving the gun.

Officer Von Feldt. This ruling is without prejudice to Defendant's ability to ask the Court to reissue the subpoena for Von Feldt's personnel records, if necessary, prior to trial.

2. Admissibility

Neither the Interested Parties nor the Government object to the issuance of the materials responsive to the Personnel Records Subpoena on admissibility grounds. Because Officer Faust will be the Government's chief witness at the suppression hearing, the materials from his personnel file will be admissible for impeachment purposes, if nothing else. Thus, the Court finds that Defendant has met his burden of showing that the requested materials are admissible. *See U.S. v. LaRouche Campaign*, 841 F.2d 1176, 1180 (1st Cir. 1988) (district court was within its discretion to allow 17(c) subpoena returnable pre-trial for impeachment evidence because witness was certain to testify and requiring that disclosure wait until such testimony occurred would unreasonably delay the trial); *United States v. King*, 194 F.R.D. 569, 574-75 (E.D. Va. 2000).

3. Specificity

The specificity requirement is designed to prevent the defense from using the Rule 17(c) subpoena as a "fishing expedition." "*Nixon* mandates that the party requesting the information identify the item sought and what the item contains, among other things." *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002).

The Interested Parties argue that Personnel Records Subpoena is too broadly worded and requests all information from the officers' personnel files regardless of its potential relevance. (ECF No. 32 ¶ 6.) The Court disagrees. Though Defendant does not refer to specific documents from the Officers' personnel files, his request is limited to

the topics of "work history and training, complaints against the individual officers, disciplinary actions, both pending and already adjudicated, notes, records and reports, commendations." (ECF No. 26.) This shows that Defendant has attempted to limit the evidence sought to be produced to those subjects most likely to yield impeachment material. Without having seen the personnel files, the Court cannot imagine how Defendant could be more specific.[6]

The Court finds that materials sought from Officer Faust's personnel records are relevant, admissible and specific. Defendant has therefore satisfied the *Nixon* standard with respect to his request for specific materials from Officer Faust's personnel file.

    4.    <u>Officer Faust's privacy interests</u>

The Interested Parties move to quash the Personnel Records Subpoena in part because production of the materials in the personnel files would violate the Officers' privacy interests.

The Colorado Supreme Court has recognized that police officers have a right to privacy in their personnel files. *See People v. Spykstra*, 234 P.3d 662, 670 (Colo. 2010). Thus, in Colorado, a defendant must "make a greater showing of need and, in fact, might not gain access to otherwise material information depending on the nature of the interest against disclosure." *Id.* (citing *Martinelli v. Dist. Ct.*, 612 P.2d 1083, 1091 (1980).

---

[6] To the extent that the subpoena for documents from the personnel files is arguably overbroad, the Court can and will correct such overbreadth during its *in camera* review. As discussed more fully below, the officers' privacy interests in their personnel files warrant disclosure of only that information material to this case and likely to be relevant for impeachment purposes. The Court will be mindful of these considerations as it conducts its *in camera* review.

The Colorado courts have devised a test for determining whether to require disclosure of materials in which an officer has a privacy interest:

> When the right to confidentiality is invoked to prevent disclosure of personal materials or information, a tri-partite balancing inquiry must be undertaken by the court, as follows:
>
> (1) does the party seeking to come within the protection of right to confidentiality have a legitimate expectation that the materials or information will not be disclosed?
>
> (2) is disclosure nonetheless required to serve a compelling state interest?
>
> (3) if so, will the necessary disclosure occur in that manner which is least intrusive with respect to the right to confidentiality?

*Martinelli*, 612 P.2d at 1091.  The balancing of the need for disclosure with the privacy interests of the officer must be done on a case-by-case basis.  *ACLU v. Whitman*, 159 P.3d 707, 710-11 (Colo. Ct. App. 2006).

### a.  Legitimate expectation of privacy

Defendant acknowledges that Officer Faust has a significant privacy interest in the requested material.  Thus, there is no dispute that the first prong of the test is satisfied.

### b.  Compelling governmental interest

Given a criminal defendant's right to compulsory process and right to confront the witnesses against him, information sought in an effort to impeach a key government witness certainly serves a compelling state interest.  The Tenth Circuit has held that the Court's interest in determination of the truth and the defendant's right to exculpatory

evidence can override a police officer's privacy interests in their personnel files, including reports of internal affairs. *Denver Policemen's Protective Ass'n v. Lichtenstein*, 660 F.2d 432, 436 (10th Cir. 1981).

The information sought here certainly goes to the pursuit of truth and is potentially exculpatory. "When the only prosecution witnesses are the police officers involved, anything that goes to their credibility may be exculpatory." *Lichtenstein*, 660 F.2d at 436. The Colorado Supreme Court has held: "A defendant who is charged with assaulting a police officer is entitled to disclosure of the fact that complaints charging excessive use of force have been filed against the officer involved." *People v. Walker*, 666 P.2d 113, 121-22 (Colo. 1983). In *Martinelli*, the Colorado Supreme Court held that internal affairs reports could contain evidence probative of the officer's propensity towards misconduct. 612 P.2d at 1083.

The key issues in the suppression hearing will be whether Officer Faust had sufficient reason to initiate the traffic stop and whether he saw marijuana in plain view upon his initial approach of the Jeep. Under the precedent cited above, it is apparent that both the Tenth Circuit and the Colorado courts recognize that evidence relating to Officer Faust's credibility would serve a compelling state interest.

### c.    Least intrusive means of disclosure

"When it is determined that a compelling state interest mandates the disclosure of otherwise protected materials or information, the trial court must further inquire into the manner in which the disclosure will occur. Disclosure must only be made in a manner, consistent with the state interest to be served, which will intrude least on the claimant's right to confidentiality." *Martinelli*, 612 P.2d at 1092. The Colorado Supreme

Court has explicitly and repeatedly approved of *in camera* judicial review as the least intrusive means for determining whether disclosure is appropriate. *See Walker*, 666 P.2d at 122 (trial court's *in camera* review of internal affairs reports prior to production protected the interests of the defendant, the government, and the public).

In this case, Defendant recognizes Officer Faust's privacy interests in the materials contained in their personnel files and does not oppose the Court conducting an *in camera* review of the material before it is disclosed to Defendant. (ECF No. 38 at 9.) The Interested Parties also request that, should any material be disclosed to Defendant, such disclosure be subject to a protective order. (ECF No. 32 at 5-6.) Defendant does not oppose this request. (ECF No. 38 at 9.)

In sum, the Court finds that Defendant's right to compulsory process and to confront the key witness against him outweighs Officer Faust's right to privacy in his personnel file. However, so as to respect Officer Faust's privacy interests as much as possible, the Court will conduct an *in camera* review of the materials and will require that any materials ultimately produced to Defendant be subject to a protective order.[7]

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.  The Motions to Quash the MDT Subpoena are DENIED. Materials responsive to the MDT Subpoena shall be produced to Defendant in accordance with the terms

---

[7] DPD has submitted a proposed protective order. (ECF No. 32-2.) At argument, it appeared there may be some question as to whether Defendant opposed the form of the proposed protective order. If Defendant has any objection to the proposed protective order submitted by DPD, he should so notify the Court by August 23, 2011.

      of the subpoena not later than **August 23, 2011**;

2. The Motions to Quash the Personnel Records Subpoena are GRANTED with respect to Officer Von Feldt's personnel records but DENIED as to Officer Faust's personnel records.  The Denver Police Department shall produce to the Court for *in camera* review the materials responsive to the subpoena[8] with respect to Officer Faust's personnel record by close of business on **August 23, 2011**.  DPD is free to redact identifying information (*e.g.* social security numbers, addresses, phone numbers) from these materials prior to producing them to the Court.

3. The evidentiary hearing on Defendant's Motion to Suppress remains set for August 26, 2011 at 9:30 a.m. in Courtroom A601.

Dated this 18th day of August, 2011.

BY THE COURT:

_____
William J. Martínez
United States District Judge

---

[8] Though DPD has argued that the Personnel Records Subpoena would require that it produce irrelevant materials such as vacation requests and names of family members, the Court points out that the subpoena requests only those documents that relate to Officer Faust's "work history and training, complaints against [Officer Faust], disciplinary actions, both pending and already adjudicated, notes, records and reports, commendations."